# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                          **Case No. 05-CR-325**

**MARIA FREGOSO-BONILLA and**
**HERMALINDA VALLE-FREGOSO**
        **Defendants.**

## SENTENCING MEMORANDUM

The government charged defendants Maria Fregoso-Bonilla and Hermalinda Valle-Fregoso with conducting an unlicensed money transmitting business, contrary to 18 U.S.C. § 1960. Defendants pleaded to the charge, and the probation office prepared pre-sentence reports in anticipation of sentencing. The probation office set the base offense level at 16 for both defendants under U.S.S.G. § 2S1.3(a)(2), added 2 to Fregoso-Bonilla's level under U.S.S.G. § 3B1.1(c), then subtracted 3 for acceptance of responsibility as to both under § 3E1.1. Because neither defendant had a prior record, they fell into criminal history category I. Thus, the guidelines recommended a prison term of 18-24 months for Fregoso-Bonilla and 12-18 months for Valle-Fregoso.

No one objected to the probation office's guideline calculations, which I found correct and adopted as to both defendants. Defendants requested a sentence of probation under 18 U.S.C. § 3553(a), while the government advocated prison terms at the low end of the advisory range. I elected to place both defendants on probation with a condition of home confinement, and in this memorandum set forth the reasons why. See 18 U.S.C. § 3553(c).

## I. SENTENCING PROCEDURE

In imposing sentence, the district court must first calculate the advisory guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007). The § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id.; see also Kimbrough v. United States, No. 06-6330, slip op. at 12 (U.S. Dec. 10, 2007) (stating that the "overarching provision" of the statute is to "'impose a sentence sufficient, but not greater

2

than necessary' to accomplish the goals of sentencing"). In making this determination, the district court may not presume that the guideline sentence is the correct one. Rita v. United States, 127 S. Ct. 2456, 2465 (2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007). Rather, after accurately calculating the advisory range, so that it "can derive whatever insight the guidelines have to offer, [the court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

## II. DISCUSSION

### A. Nature of Offense

Mexicans living in the United States send home billions of dollars each year. See, e.g., S. Lynne Walker, Flow of Money from Mexicans in the U.S. Counters Pressure to Control Migration, San Diego Union Trib., Feb. 7, 2007. Some rely on commercial banks or other traditional financial services providers to move their money, others on less traditional means. See, e.g., Mitch Deacon, Immigrant Community Caged in Cash Economy, Daily Press (Victorville, CA), Apr. 2, 2007. Those engaged in the business of transmitting funds in interstate or foreign commerce must register with the federal government, see 18 U.S.C. § 1960(a)(1)(B), and often must obtain a license from the State in which they do business, see § 1960(a)(1)(A). In the present case, defendants ran afoul of these licensing requirements.

A woman named Sandra Contreras, who operated an illegal money transmitting business in Utah with her husband, approached Valle-Fregoso about participating in the business in Milwaukee, where Valle-Fregoso lived with her aunt, Fregoso-Bonilla. Valle-Fregoso asked Fregoso-Bonilla to participate, the latter agreed, and they started collecting

3

money from Mexicans living in the Milwaukee area and either sending it to Contreras or putting it in Contreras's bank accounts, and Contreras would then transmit it to Mexico. The business operated in Milwaukee for about ten months and transmitted between $120,000 and $200,000. Defendants had no license to engage in this activity.

Fregoso-Bonilla was most culpable in the operation in Milwaukee, as she ran the business and deposited most of the money. She also enlisted others who lived in her house to collect money and write receipts in her absence. Valle-Fregoso typically turned any money she collected over to Fregoso-Bonilla, and in exchange for her assistance was allowed to live with Fregoso-Bonilla for less rent.

**B.     Character of Defendants**

   **1.     Fregoso-Bonilla**

Fregoso-Bonilla was forty-two years old and had no prior record. She came to the United States from Mexico in the mid-1980's and became a lawful permanent resident in 1991. She had a steady employment history and owned her own home in Milwaukee, where she had lived for ten years. She had no history of substance abuse or other undesirable behavior. In sum, aside from this offense, she had behaved as we want immigrants to our country to behave. The record disclosed no correctional treatment needs on her part.

   **2.     Valle-Fregoso**

Valle-Fregoso was twenty-eight years old and also had no prior record. She came to the United States from Mexico in January 2002 but acquired no lawful status and thus was subject to possible deportation as a result of her conviction. As indicated above, she lived with her aunt in Milwaukee and cared for her two younger siblings, as well as four children of

4

extended family members.  Prior to her child care activities, she worked as a machine operator using a cousin's name and social security number.  Like her aunt, she had no history of substance abuse and appeared to have no correctional treatment needs.  She obtained the equivalent of a high school diploma in Mexico.

**C.    Guidelines and Purposes of Sentencing**

The guidelines recommended prison terms for both defendants, but I concluded that such sentences were greater than necessary to satisfy the purposes of sentencing.  First, prison was not necessary to provide just punishment in this case.  See 18 U.S.C. § 3553(a)(2)(A).  Although the government originally began its investigation of defendants' activities with an eye towards a money laundering or drug distribution prosecution, it conceded that it was unable to collect any evidence that defendants knew or believed that drug traffickers or other criminals were using the business to transmit ill-gotten funds.

Further, it was doubtful that defendants, both unsophisticated immigrants who spoke little English, understood the licensing requirements under § 1960.[1]  Certainly, they did not set out to violate the law or to assist criminals in transmitting their bounty.  Rather, the evidence showed that they wanted to help other Mexicans in the area get money back to their families, while raising some extra income for themselves.[2]  As I ruled in denying defendants' pre-trial

---

[1] Fregoso-Bonilla denied knowledge of such requirements, while the government claimed that there was some evidence in the record at least suggesting knowledge on the part of both defendants.

[2] It appeared that Contreras took the lion's share of the profits, and defendants earned relatively little in comparison to the "loss" amount for which they were held responsible under U.S.S.G. § 2S1.3(a)(2) & 2B1.1(b).  Valle-Fregoso apparently made no "profit" at all; rather, she was allowed to continue living with Fregoso-Bonilla for less rent based on her assistance in running the business.

5

motions on the issue, § 1960 does not require the government to prove knowledge of the licensing requirement; thus, defendants' ignorance was no defense to the charge. But it was relevant in assessing their moral culpability for purposes of imposing just punishment, as was their motive for getting involved in this business.

I also noted that the Sentencing Commission has in U.S.S.G. § 2S1.3 lumped § 1960 money transmitting business offenses in with crimes such as structuring financial transactions under 31 U.S.C. § 5324, which requires the defendant to act with the purpose of evading such requirements, and failing to file currency reports under 26 U.S.C. § 7203, which requires the person to act willfully. These types of offenses require a type of motive or knowledge of the wrongfulness of conduct that § 1960 does not. Thus, in § 1960 cases such as this one, § 2S1.3 may recommend punishment greater than necessary. Finally, I noted that defendants did not come up with the idea to start this business. Rather, it was Contreras, who already had an established business, who recruited Valle-Fregoso, who in turn enlisted Fregoso-Bonilla.

Second, prison was not necessary to protect the public in this case. See 18 U.S.C. § 3553(a)(2)(C). Neither defendant had a prior record, and their character and backgrounds demonstrated that they posed no threat to the public. As indicated, defendants did not come up with the idea of operating this business and the record otherwise showed that they had little or no criminal propensity themselves.

Third, prison was not necessary to deter defendants from re-offending. See 18 U.S.C. § 3553(a)(2)(B). It appeared that the criminal process, which took two years to complete, had a serious impact on them, and I required a significant period of supervision in the community

6

to ensure that they were monitored for any future violations.[3]

Under all of the circumstances and considering the types of sentences available, I found sentences of probation with a condition of home confinement sufficient but not greater than necessary. See Gall v. United States, No. 06-7949, slip op. at 20-21 (U.S. Dec. 10, 2007) (stating that the guidelines are only one of the factors to consider when imposing sentence, and that § 3553(a)(3) directs the judge to consider the types of sentences available, including probation). For the reasons stated, prison was not necessary here; confinement in the community provided a sufficient measure of punishment and deterrence under all the circumstances. In recognition of her superior role in the crime, I also ordered Fregoso-Bonilla to pay a $500 fine.

In imposing these sentences, I recognized that businesses of this sort can make it easier for drug dealers, terrorists and others engaged in illegal activity to move money, but there was no evidence of such aggravating factors in this case, and the prospect of a felony conviction and the sentence I imposed was sufficient to deter others from engaging in similar activity. Because I based the sentences on the specific facts of the case, recounted herein, they did not create unwarranted disparity. See 18 U.S.C. § 3553(a)(6). I also noted that the Commission itself has acknowledged that in certain cases under § 2S1.3 an offense level of 6 – and thus a sentence of probation – is proper; although it appeared that not all of the criteria of § 2S1.3(b)(3) were met in this case, the concerns animating that reduction were present.[4]

---

[3] I also noted that six children depended on Valle-Fregoso for regular care and supervision. This included her two youngest siblings, ages fifteen and twelve, who lived with defendant and whose mother was deceased.

[4] Section 2S1.3(b)(3) calls for an offense level of 6 if: (A) subsection (a)(2) applies; (B) the defendant did not act with reckless disregard of the source of the funds; (C) the funds were

7

## III. CONCLUSION

Therefore, I placed defendants on probation for a period of three years, with a condition that they serve six months on home confinement on electronic monitoring. I also imposed financial monitoring and disclosure conditions, and other terms that appear in the judgments.

Dated at Milwaukee, Wisconsin, this 10th day of December, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

the proceeds of lawful activity; and (D) the funds were to be used for a lawful purpose,